Curia, per
O’Neall, J.
In this case the single bill was not the property of Gen. Wimbish; it was in his hands merely as attorney; and when the Ordinary took possession of his estate, as derelict, it did not necessarily follow that it ought to be in his possession. Its place of deposite was his office, among other papers confided to him as attorney; these had been diligently examined by Mr. Wardlaw, as he proved, and it could not be found. The existence and contents of the paper were admitted by the defendants’ own answer; there was, therefore, no motive to withhold the paper. A search, in the place where it was most likely to be found, is all which the law demands ; 1 Greenleaf Ev. §558. In the section to which I have referred, Greenleaf says, after such a search, the plaintiff’s own affidavit of loss is admissible; but that has never been allowed in this State; Davis & Tarlton vs, Benbow, 2 Bail. 428. A search being all the proof of loss *40 which could be made, the secondary evidence was properly admitted. ** *<■ • * *
After the case had been made out, and the defendants were in their defence, Mr. Tomkins, who had bought a bureau belonging to Gen. Wimbish, at the Ordinary’s sale, thinking it was possible the note might be in it, examined, found and brought the bill into court, and delivered it to plaintiff’s attorney. This, it seemed to me, ended all the difficulties of the case. -For there was no longer any possible danger of fraud, or loss to the defendants. But it has been urged here, the plaintiff could not recover, after the bill was produced, inasmuch as he had declared upon it, as lost. This might have been true, if the bill had been, in the first place, produced. But the party had complied with the rule ; had prima facie established the loss — had shewn the existence and contents of the bill; and was entitled to recover against the defendants, before it was produced. Its production, (if it had been given in evidence by either party, which, by-the-by, was not done) would not have destroyed the plaintiff’s right to recover— it would have fortified it. For the technical objection under the excuse for non proferí, could not arise, on the defendants’ proof. After the plaintiff had shewn, in the beginning, a case of loss, and that he had not the deed when he filed his declaration, or when he closed his case to the jury, there was no ground of objection, that his proof did not correspond with his allegation. The only questions which then remained, were upon the merits. The first of these was, is the bill the deed of the defendants ? The production of the original paper could not, and did not, shew that it was not their deed.
As to the second ground, it is neeessary to consider it in two parts.
1st. Was the plaintiff concluded by the statement in the bill in equity, that the plaintiff was a partner of the de-féndants? Greenleaf (vol. 1, §212) states the rule, that a bill in equity is not conclusive against the party complainant ; it “ is evidence,” he says, “ against the plaintiff of the admissions it contains, though very feeble evidence, so far as it may be taken as the suggestions of counsel.” It *41 is plain, on looking into this bill, that the allegation of partnership was the mere conclusion of the counsel (Gen. Wimbish) who drew the bill, from the articles exhibited; and it is equally plain that he was mistaken. But the learned counsel bringing up the case, conceded the general rule, and urged that this was an exception, inasmuch as the plaintiff gave the bill in evidence. That; I do not think7 would alter the case. Still, however, it is enough to say, that the plaintiff really only gave the bill in evidence, as part of the record, to enable him to read the answer. It was the defendants who put their fingers on the allegation in the bill, and claimed the benefit of it.
2d. Is the plaintiff a partner of the defendants, and therefore liable to pay this bill ? It is plain he is not. The note was given for the purchase of property from him. The defendants made the bill, and according to their own articles, (to which the plaintiff was not a party,) constituted the firm of Ramey, Rhodes & Co. The stipulation in it, by which he was to have a certain part of the profits of the business, was to insure the payment to him of the sum which was to be paid to him for his interest in the Pottery which had been purceased by R. Mathews, and for the hire of some slaves to turn ware in the pottery in 1837. This did not make him a partner. He did not participate in profit or loss, as such. He was to receive a part of Mathews’ share of the profits; but not on account of any thing he had to do with the business. It was so much set apart by the co-partners, as a fund out of which Mathews’ debt was to be paid.
The motion for a nonsuit, or new trial, is dismissed.
Richardson, Evans, Wardlaw and Frost, JJ. concurred.